IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JAVIER HERNANDEZ RIVERA,

    Plaintiff,

    v.                                    CIVIL NO. 03-1494 (RLA)

MUNICIPALITY OF AGUADILLA,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

The MUNICIPALITY OF AGUADILLA ("MUNICIPALITY"), the only remaining defendant in these proceedings, has moved the Court to dismiss the claims asserted by plaintiff in the Second Amended Complaint (docket No. 47) pursuant to Rule 12(b)(6) Fed. R. Civ. P. The Court having reviewed plaintiff's arguments in response thereto as well as the allegations in the aforementioned pleading hereby finds as follows.

Plaintiff instituted this action seeking damages and equitable relief pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and various local statutory provisions.

In its motion the MUNICIPALITY initially argues that plaintiff has no valid § 1983 cause of action in that he has no actionable First Amendment or retaliation claim nor is there municipal

liability.  Additionally, defendant contends that the Title VII claim may be time-barred, plaintiff is not entitled to equitable relief and that we should decline supplemental jurisdiction in this action.

### THE COMPLAINT

The allegations in the complaint are straightforward and can be summarized as follows.

Since approximately August 1997 plaintiff was employed as a policeman by the MUNICIPALITY OF AGUADILLA with a satisfactory performance.

In February 2002 plaintiff testified in proceedings at the Equal Employment Opportunity Commission ("EEOC") initiated by BLANCA VALENTIN ALMEIDA, a female Aguadilla municipal police officer, complaining of sexual discrimination and harassment at her workplace.

According to plaintiff, as a result of his participation in the EEOC proceedings defendants put in place a retaliation plan aimed at his eventual termination from employment.  As part of the aforementioned scheme, plaintiff's working conditions were changed and he was routinely assigned duties involving greater hardship and risks.

Eventually, on December 12, 2002 plaintiff was summarily terminated from his position as a result of a selective accusation of wrongdoing.  Plaintiff further contends that his dismissal was an unreasonable and disproportionate sanction and motivated by

CIVIL NO. 03-1494 (RLA)                                          **Page 3**

retaliatory animus based on his cooperation with the EEOC investigation.

On April 27, 2003 the EEOC issued plaintiff a Notice of Right to Sue letter.

The original complaint in this action was filed on May 6, 2003.

### RULE 12(b)(6)

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the Court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Frazier v. Fairhaven School Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) cert. denied 116 S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. Alternative Energy, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts

as pleaded plaintiff may not prevail on any possible theory. Berezin, 234 F.3d at 70; Tompkins, 203 F.3d at 93.

### SEC. 1983

Defendant bases his request for dismissal of the § 1983 claim on plaintiff's alleged failure to adequately plead either a First Amendment or retaliation claim. Additionally, the MUNICIPALITY argues that there is no municipal liability in this case.

Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

This provision does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The statute, i.e., § 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.'" Rodríguez García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3,

99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).  *See also*, <u>Local Union v. Massachusetts</u>, 377 F.3d 64, 75 (1ˢᵗ Cir. 2004) ("Of course, § 1983 does not itself confer substantive federal rights; it simply provides a remedy for their deprivation.") Hence, it is plaintiff's burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) he was deprived of a federally protected right.  <u>Rogan v. City of Boston</u>, 267 F.3d 24 (1ˢᵗ Cir. 2001); <u>Dimarco-Zappa v. Cabanillas</u>, 238 F.3d 25, 33 (1ˢᵗ Cir. 2001); <u>Collins v. Nuzzo</u> 244 F.3d 246 (1ˢᵗ cir. 2001); <u>Barreto-Rivera v. Medina Vargas</u>, 168 F.3d 42, 45 (1ˢᵗ Cir. 1999).

Therefore, we must ascertain whether plaintiff has adequately pled that he was deprived of any federally protected right as a result of the events alleged in the complaint.

### First Amendment

According to defendant, plaintiff's testimony before the EEOC did not involve a matter of public concern in that plaintiff's speech only addressed an individual's work situation.  The MUNICIPALITY further contends that the internal working conditions of a government agency is not of inherent public interest.

"Claims for retaliation for the exercise of First Amendment rights are cognizable under § 1983." <u>Powell v. Alexander</u>, 391 F.3d 1,

16 (1st Cir. 2004).  In order to establish a § 1983 claim premised on a First Amendment violation a public employee must show that "(1) his expression involved matters of public concern; (2) his interest in commenting upon those matters outweighed the [MUNICIPALITY OF AGUADILLA's] interests in the efficient performance of its public services; and (3) his protected speech was a substantial or motivating factor in the... adverse employment actions." Baron v. Suffolk County Sheriff's Dept., 402 F.3d 225, 232 (1st Cir. 2005) (citing Lewis v. City of Boston, 321 F.3d 207, 218 (1st Cir. 2003)); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 11 (1st Cir. 2003).

Protection extends to communications both within and outside work.  *See*, Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 11 n.10 (1st Cir. 2003) ("First Amendment protects employee speech about matters of public concern even if the employee does not seek to make the speech to an audience outside the workplace.")

Our initial inquiry is focused on whether plaintiff's testimony before the EEOC in connection with sex discrimination and harassment claims filed by a work colleague is a matter of public concern or is merely one of plaintiff's personal interest as defendant contends.

"There are some situations where public interest will be apparent from the content of the speech alone." Baron, 402 F.3d at 233.  "On the other hand, public-employee speech on a topic which would not necessarily qualify, *on the basis of its content alone*, as a matter of inherent public concern (e.g., internal working

**CIVIL NO. 03-1494 (RLA)**                                    **Page 7**

conditions, affecting only the speaker and co-workers), may require a more complete... analysis into the form and context of the public-employee expression 'as revealed by the whole record,' with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and if so, whether the 'form' of the employee's expression suggests a subjective intent to contribute to any such public discourse." <u>Baron</u>, 402 F.3d at 233 citing <u>O'Connor v. Steeves</u>, 994 F.2d 905, 913-14 (1st Cir. 1993)).

The fact that the communication touches upon internal office matters does not automatically preclude an inherent public interest on the subject. *See*, i.e., <u>Connick v. Myers</u>, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (item in questionnaire regarding possible political pressure upon district attorneys found to be of public interest in that government service should be based on merit and not on political patronage); <u>Baron</u> (repeated complaints of harassment in retaliation for reporting misconduct of prison officers implicated public interest; it concerned actual wrongdoing and also affected inmates).

Contrary to defendant's argument, we find that the situation before us is imbued with public interest. Taking plaintiff's allegations as true, he was terminated for having testified regarding discriminatory conduct against a female fellow police officer. Not only is sex discrimination specifically proscribed by federal and

CIVIL NO. 03-1494 (RLA)                                              Page 8

---

state law but the statutes themselves penalize reprisal against those
who venture in the defense of victims of discrimination.  Protection
of witnesses validating claims of illegal discrimination is a matter
of both public policy and concern.  This is particularly so in
situations involving police officers, such as the case before us,
where the reproachable conduct is precisely by those responsible for
enforcing the law.  There is an inherent public concern in ensuring
not only that public employees feel free to testify at EEOC
proceedings without the fear of losing their jobs but also that
police officers abide by the law they have sworn to uphold.

Thus, there is no need to further inquire into the form and
content of plaintiff's speech.

### Retaliation Claim

In the alternative, defendant claims that plaintiff's
retaliation claim should be dismissed because he was dismissed
subsequent to having charges filed against him and thus, he would
have been terminated regardless of his testimony.  This argument is
not suited to a Rule 12(b)(6) procedure but rather would be grounds
for summary judgment or trial.

The same holds true for defendant's claim that plaintiff's
allegation that his permanent discharge was an "unreasonable and
disproportionate sanction" constitutes grounds for an administrative
claim and not civil rights violation.

CIVIL NO. 03-1494 (RLA)                                    **Page 9**

---

## MUNICIPAL LIABILITY

Defendant further argues that there can be no municipal liability in this case because there is no underlying policy or custom.

As defendant correctly points out, the doctrine of *respondeat superior* - whereby liability is imposed on employers for the acts or omissions of their employees - is inapposite in actions brought under § 1983. <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 129 (1st Cir. 2005); <u>Baron</u>, 402 F.3d at 236. In order to hold the municipality accountable plaintiff must present evidence that the damages complained of resulted from the "execution of a [municipality's] policy or custom". <u>Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658, 695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

> [A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.  Rather, a municipality is liable only when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts [that] may fairly be said to represent official policy, inflicts the injury.

<u>Wilson v. City of Boston</u>, 421 F.3d 45, 59 (1st Cir. 2005) (citations and internal quotation marks omitted).

However, high ranking municipal officers through their actions may establish the necessary policy to render the municipality liable under § 1983.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered... [P]articular officers may have authority to establish binding [city] policy respecting particular matters and to adjust that policy for the [city] in changing circumstances... We hold that municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

Wilson v. City of Boston, 421 F.3d at 59 (citing Penbaur v. City of Cincinnati, 475 U.S. 469, 481-83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). *See also*, Baron, 402 F.3d at 236 ("In a § 1983 suit based on an official policy promulgated by officials with final policy-making authority, attribution to the municipality is easily established.")

Further, one sole action may be tantamount to municipal policy. "An unconstitutional policy... may be inferred from a single decision or act... [but] the isolated action must be taken by a municipal

official with 'final policy-making authority' in the relevant area of the city's business." <u>Wilson v. City of Boston</u>, 421 F.3d at 59 (citing <u>Roma Constr. Co. v. aRusso</u>, 96 F.3d 566, 576 (1st Cir. 1996)). It is plaintiff's burden to establish that a particular officer had the necessary authority to set the municipal policy at issue. <u>Wilson v. City of Boston</u>, 421 F.3d at 60.

Pursuant to municipal law the AGUADILLA Mayor had the authority to hire and fire municipal employees[1] and also held the highest supervisory authority over the municipal police.[2] Therefore, making all reasonable inferences in plaintiff's favor in accordance with Rule 12(b)(6) we find that the complaint sufficiently pled municipal liability for purposes of § 1983. *See*, i.e., "[Mayor] had the authority to control the conditions of [plaintiff's] employment by virtue of being the Mayor...  The employment decisions he made in that capacity constituted the policy of the municipality under well-established precedent." <u>Rivera-Torres</u>, 341 F.3d at 104.

### TIMELINESS OF TITLE VII

It appearing that plaintiff filed his EEOC claim and the initial complaint within the limitations established in Title VII, 42 U.S.C. § e(5)(1), we conclude that this action was timely filed.

---

[1] *See*, 21 P.R. Laws Ann. § 4109(o) (2005).

[2] *See*, 21 P.R. Laws Ann. § 1064 (2005).

CIVIL NO. 03-1494 (RLA)                                        Page 12

---

## EQUITABLE RELIEF

Defendant argues that plaintiff is not entitled to reinstatement because he has not pled a due process violation. This argument is without merit.

Equitable relief, including reinstatement, is available under both Title VII,[3] and § 1983.[4] Whether or not plaintiff will be entitled to reinstatement in this case must be decided at a later stage. Equitable relief is reserved for the court's discretion. *See*, Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 43 (1st Cir. 2003) (it is within the "district court's discretion to fashion an equitable remedy"); Velazquez v. Figueroa-Gomez, 996 F.2d at 428 (discussing factors to be taken into consideration by the court); Tejada-Batista v. Fuentes-Agostini, 263 F.Supp.2d 321, 324 (D.P.R. 2001) (court must apply its discretion in determining whether reinstatement is appropriate.)

---

[3] *See*, Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 43 (1st Cir. 2003) (plaintiffs in Title VII employment discrimination suits entitled to equitable remedies); Selgas v. Am. Airlines, Inc., 104 F.3d 9, 12 (1st Cir. 1997) ("The remedial scheme in Title VII is designed to make a plaintiff who has been the victim of discrimination whole through the use of equitable remedies.")

[4] *See*, Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428-29 (1st Cir. 1993) (reappointment one of the remedies available for termination due to First Amendment discrimination); Bullen v. Chaffinch, 336 F. Supp.2d 357, 359 (D.Del. 2004) (reinstatement "preferred remedy to compensate an aggrieved party for loss of future earnings as a result of illegal, adverse employment actions, including actions that violate 42 U.S.C. § 1983").

CIVIL NO. 03-1494 (RLA)                                          **Page 13**

---

**SUPPLEMENTAL JURISDICTION**

The court having denied defendant's request to dismiss the federal claims, there is no reason for the court not to entertain the local claims included in the complaint pursuant to 28 U.S.C. § 1367.

**CONCLUSION**

Defendants' Motion to Dismiss (docket No. **63**)[5] is **DENIED.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 23rd day of November, 2005.


                                        S/Raymond L. Acosta
                                      RAYMOND L. ACOSTA
                                 United States District Judge

---

[5] *See*, Plaintiff's Opposition (docket No. **71**).